CHARLES H. STUART & others *vs.* CITY OF CAMBRIDGE.

Suffolk.  March 18. — July 24, 1878.  COLT & AMES, JJ., absent.

A. made an agreement in writing with a city, for a round sum, to provide all materials and perform all labor required in the erection of a public building upon a certain parcel of land, according to plans, drawings and accompanying mason's specifications, prepared by a certain architect, and such other drawings and detail explanations, as might be considered necessary for the progress and completion of the building, according to the true intent and meaning thereof. The agreement also provided that, in case any particulars should be deficient or not clearly shown by the plans or expressed in the specifications, A. should carry out the general design, as directed by a certain committee and the architect, in as thorough a manner as if the same were shown and fully expressed; that it should be lawful for the committee or architect to direct in writing any additions to or deviations from the plans and specifications, and in such case such sums of money should be added to, or deducted from, the agreed price, as the parties to the agreement should judge the

increase or diminution to be worth; that no alterations or additions should be paid for unless so directed in writing. The specifications provided that A. should remove the earth from the area of the lot to be covered by the building, to the requisite length, breadth and depth for the basement, walls, foundations, &c; that the exterior basement foundation walls should be constructed of large, flat, blue stone, to be faced upon both sides, and laid solid in and pointed on both sides with mortar; that the earth beneath the walls should be thoroughly tamped and puddled and the bottom course firmly bedded upon it; that all the basement walls should commence fourteen inches at least below the basement floor, and as much deeper as necessary, to guarantee a firm and solid foundation, the walls to be of the thickness and construction indicated by the drawings; that A. should do any and all other masonry necessary to fully finish and complete all parts of the building, according to the true intent and meaning of the plans, drawings and specifications, whether particularly therein described or not. The plans showed a section of the foundation walls fourteen inches below the basement floor and no more, and did not indicate any piles, nor were any mentioned in the specifications. In excavating for the foundations, the soil was found to be of such a character as to require, in the opinion of the architect, piles to be driven in order to secure a firm foundation for a part of the walls. The architect accordingly furnished piling plans, directed A. to do the work, and orally promised him that he should be paid for it. A. drove the piles, cut them off, placed coping stones on them, and rubble stones on the coping stones up to the line of the foundation walls, as shown in the plans. *Held*, in an action for the work and materials so done and furnished, that parol evidence that the plaintiff made his estimate for the cost of the work based on the plan showing a section which required a depth of only fourteen inches, and that other persons in the same business were accustomed to make estimates in the same manner, was incompetent; that the defendant was not bound by the oral promise of the architect that the work should be paid for; and that the action could not be maintained.

CONTRACT on an account annexed to recover $591.84, for labor performed and materials furnished. At the trial in the Superior Court, before *Wilkinson*, J., without a jury, it appeared that on November 20, 1874, the plaintiffs, as the parties of the first part, and the defendant, acting by its committee on public property, as the party of the second part, entered into an agreement, under seal, the material parts of which were as follows :

" The said parties of the first part do hereby agree for themselves, their heirs and assigns, to provide all materials and perform all labor required in the erection and completion of the masonry of a building, for the party of the second part, to be located upon its estate situated on the corner of Sacramento and Oxford streets, in and for said city, according to plans, drawings, and the accompanying mason's specifications, prepared by J. H. Littlefield, architect, bearing even date herewith, and signed by the parties hereto; and such other drawings and detail explana-

tions, as may be considered necessary for the progress and com·
pletion of the building, according to the true intent and meaning
thereof.

" And in case any particulars shall be deficient or not clearly
shown by said plans or expressed in said specifications, the said
parties of the first part shall carry out the general design as di-
rected by said committee and architect in as thorough a manner
as if the same were shown and fully expressed.

" And in case any work or materials done or provided by the
said parties of the first part shall be unsatisfactory to the said
committee or architect, then the said parties of the first part
shall, on being notified thereof by said architect, immediately
remove such unsatisfactory work or materials and supply the
place thereof with other work or materials which shall be satis-
factory to said committee and architect.

" And it shall be lawful for the said committee or architect at
all times to direct in writing any additions to or deviations from
the plans and specifications aforesaid, without in any other re-
spect or particular varying this agreement or impairing the force
thereof ; and in case of any such deviations or additions, so di-
rected in writing, such further time shall be allowed for the com-
pletion of the said work as the said architect shall decide to be
reasonable, and such sums of money shall be added to, or de-
ducted from, the amount of the consideration hereinafter agreed
to be paid, as the said parties, committee and architect shall
judge the increase or diminution in the amount of work and ma-
terials thereby occasioned to be fairly worth.

" And it is expressly agreed that no alterations or additions
are to be paid for unless so directed in writing.

" In consideration of the foregoing, the said party of the sec-
ond part hereby agrees to pay to the said parties of the first
part " " the sum of ten thousand four hundred and ninety-five
dollars, in separate payments as follows : " [Then followed a
provision in respect to the mode of payment.]

The plans did not show any piles, and the specifications, re-
ferred to in the agreement, did not mention any ; but the speci-
fications provided, under the heading " Excavations," that the
earth should be removed " from the area of the lot to be covered
by the building and other works to the requisite length, breadth

and depth, for the basement, walls, foundations, piers," &c. Under the heading "Foundations," were the following provisions:

"The exterior basement foundation walls, shown to be con structed of stone by the plans, and all other exterior foundations beneath steps, door sills, platforms, &c., are to be constructed of the best quality of large, sound, flat, blue stone, laid with the broadest sides level. The work is to be well bonded and tied together, with at least every fourth stone the full thickness of the wall. All the basement and trench walls are to be faced upon both sides, and laid straight and true to a line, the basement side with a plumb, true fall, and the exterior with a battering fairly straightened face. The work is to be laid close jointed, thoroughly pinned up, and chinked with suitable stone quoins upon both sides, and filled solid with stone clear through.

"The work will be laid solid in, and pointed on both sides with mortar composed of one cask of best Newark cement to one of best fresh Rockland lime, mixed with a proper proportion of coarse, sharp-grit sand. The mortar for the trench walls, below the basement floor, will be three fourths cement to one of lime.

"The earth beneath all the walls is to be thoroughly tamped and puddled, and the bottom course of stone firmly bedded upon it. The bed or levelling course will be laid broader than the wall above it, as indicated by the sectional drawings.

"All the basement walls will commence fourteen inches at least below the basement floor, and as much deeper as necessary to guarantee a firm and solid foundation. The walls will all be of the thickness and construction indicated by the drawings, laid and completed in the most thorough and workmanlike manner."

The specifications further provided that the plaintiffs should "do any and all other masonry and jobbing in the masonry line, necessary to fully finish and complete all parts of the building according to the true intent and meaning of the plans, drawings and the mason's specifications, whether particularly herein described or not."

The work and materials in question consisted of piles furnished and driven by the plaintiffs; in excavating to an extra depth in order to drive the piles, and in cutting them off; of coping stones, furnished to lay on the piles, with the labor of lay-

ing the same; and of rubble stones laid on the coping stones up to the line of the bottom of the foundation as shown on the plans from which the plaintiffs made their estimate, furnished for that purpose by the architect.

The defendant contended that the work and materials sued for in this action were furnished under the above agreement, for which the plaintiffs had been paid, and were within its terms, while the plaintiffs contended that the work and materials were extras not included in the contract, for which they were entitled to recover additional compensation.

The plaintiffs offered to prove that neither the plans nor specifications required any piles to be furnished or driven; that when they estimated and made the contract, they were furnished with a plan by the architect, showing a section of the foundation which they were to build, which section was figured, and required them to build the same fourteen inches below the bottom of the cellar, and no more, and that their estimate, bid and contract were made with reference to such plan and specifications; that on excavating for said foundation, as required by the plans and specifications, the soil was found to be of such a character on a part of the rear of the site of the proposed building as to make it necessary, in the opinion of the architect, to drive piles in order to secure a safe foundation for that part of the building; that thereupon the architect staked off the distance for which he wished piles to be driven, furnished the plaintiffs with piling plans, and directed them to do the work in question; and that the plaintiffs thereupon told the architect that if the piles were driven, and the work done by them, the same was not part of the contract, but would be extra work for which they would be entitled to additional compensation, and the architect told them to go ahead and do the work as he directed, and they would be paid for it. The plaintiffs also offered to prove that they then did the work in question by special direction of the defendant's architect, in accordance with the piling plans furnished them by him; that the prices charged for the same were just and reasonable; and that the architect was the defendant's agent, and authorized to bind the defendant by his acts and directions in the erection of the building.

The plaintiffs also offered to prove, by a large number of persons engaged in the same business as themselves, and accustomed to estimate and bid for similar contracts, as experts, that the custom, rule or practice was universal, where plans were furnished, from which to make estimates, showing sections of the walls, to estimate according to the section as shown, and to contract with reference thereto, and that, if afterward the walls were changed by increasing their height or depth, such change was not included in the contract, and that additional compensation was due therefor.

The judge refused to admit any evidence ; and ruled that, by the contract and specifications, the plaintiffs were bound to insure a safe foundation for the proposed building ; that the defendant might require them to go to any depth necessary for that purpose ; that, if it was necessary to drive piles to secure such a result, then the plaintiffs were bound to drive piles as part of their contract ; that they were not entitled to recover any extra compensation therefor ; and found for the defendant. The plaintiffs alleged exceptions.

*I. T. Drew*, for the plaintiffs. 1. The defendant selected the site for the building, and prepared the plans and specifications; from them the plaintiffs made their estimates of the expense. These plans and specifications nowhere call for or show the necessity of driving piles to get a safe, sound foundation. In the detailed specifications, so carefully drawn, piles are not mentioned. Contractors make estimates and bids from what appears and is required by the plans and specifications, and not from what does not appear by them, but which may afterwards become necessary. If the defendant did not sufficiently examine the site, that cannot affect the right to recover. The material and labor here sought to be recovered for were never contemplated in the original plans and specifications, and were not taken into account by the plaintiffs in their estimates. The architect, when the work was begun, found, what he had not discovered before, that the boggy character of the land required not only more excavating, but the driving of piles, and coping stones, &c. He then furnished the plaintiffs with additional plans for this work, and specially directed it to be done, telling them, in reply to their claim to that effect, that it was extra work, and

would be paid for. He and the plaintiffs were experienced in this kind of business, and knew that this work was outside the original plans. If the plans called for excavations of fourteen inches, &c., to get a good foundation, this does not mean, by any fair interpretation, that the contractors shall drive twenty-five feet piles, and cover them with coping stones, fill with rubble, &c. . The true construction of the contract, plans and specifications is that the plaintiffs are to excavate fourteen inches, more or less, as the case may require, but no pile-driving, coping or rubble stone is provided for or contemplated by any of the terms used.

2. If there is any doubt or ambiguity in the papers, or in their construction, as applied to the work in question, then the testimony offered by the plaintiffs should have been received.

3. The plaintiffs further offered to prove that the architect was the agent of the defendant, and authorized to bind the city by his acts and directions, and, with this proof admitted, the plaintiffs are clearly entitled to recover for the extra work. The contract expressly provides that the architect may make additions and deviations, and that such sums of money shall be added to, or deducted from, the consideration therein agreed to be paid, as the architect shall judge the increase or diminution in the amount of work and materials thereby occasioned to be fairly worth.

*J. W. Hammond*, for the defendant.

MORTON, J. By their contract with the city of Cambridge, the plaintiffs agreed " to provide all materials and perform all labor required in the erection and completion of the masonry of a building for the party of the second part, to be located upon its estate situated on the corner of Sacramento and Oxford streets, in and for said city, according to plans, drawings and the accompanying mason's specifications, prepared by J. H. Littlefield, architect, bearing even date herewith, and signed by the parties hereto ; and such other drawings and detail explanations as may be considered necessary for the progress and completion of the building, according to the true intent and meaning thereof." Referring to the mason's specifications, we find the provision that " all the basement walls will commence fourteen inches at least below the basement floor, and as much deeper as

necessary to guarantee a firm and solid foundation. The walls will all be of the thickness and construction indicated by the drawings, laid and completed in the most thorough and workmanlike manner."

Under their contract, the plaintiffs were required to dig to any depth necessary to secure a solid foundation. They were to make excavations " to the requisite length, breadth and depth for the basement, walls, foundations, piers," &c., and generally to do all the masonry " necessary to fully finish and complete all parts of the building according to the true intent and meaning of the plans, drawings and the mason's specifications, whether particularly herein described or not."

By the fair construction of this contract, the plaintiffs agreed to do all the work necessary to secure a solid foundation. They took the risk of its being necessary to drive piles in order to secure such foundation. The ruling of the Superior Court as to the construction of the contract was therefore correct.

The evidence offered by the plaintiffs, that they made their estimate according to a plan made by the defendant's architect, showing a section of the wall which required only a depth of fourteen inches, and did not require any piles, and that it was customary for other persons engaged in the same business to make estimates in similar cases in the same manner, was incompetent, because it tended to control and vary the written contract.

The plaintiffs also offered to show that they drove the piles and did the work for which this suit was brought, under the direction of the defendant's architect, who was the agent of the defendant ; that they contended that the work was not included in their contract, and he told them " to go ahead and do the work as he directed, and they would be paid for it."

We are of opinion that this evidence was rightly excluded. The written contract carefully provides that any additions to or deviations from the plans and specifications shall be directed in writing by the committee or architect, and that " it is expressly agreed that no alterations or additions are to be paid for unless so directed in writing." No evidence was offered of any waiver of this provision by the defendant, or of any authority in the architect to waive it. This clause was intended to protect the

defendant against claims for extra work under alleged oral directions or contracts. If the evidence offered can be construed to show an oral promise by the architect, founded upon a sufficient consideration, to pay for the work sued for as extra work, it was made without authority, and is not binding upon the defendant.

*Exceptions overruled.*