AGNES G. CORCORAN & others, trustees, *vs.* S. S. KRESGE
COMPANY
(and a cross action).

Suffolk.     November 13, 1942. — February 24, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Real Property*, Lateral support. *Municipal Corporations*, By-laws and
ordinances. *Brockton*. *Words*, "Earth."

Construction of § 34 of the revised ordinances of 1926 of the city of Brock-
ton setting forth requirements upon one making an excavation for a
building depends upon G. L. (Ter. Ed.) c. 143, § 3, which was the
source of the authority for such enactment, as well as upon the language
of the ordinance itself.

In § 34 of the ordinances of 1926 of the city of Brockton, providing that
a person causing any excavation to be made for a building, wherever
necessary, "shall at his own expense properly sheath pile and erect
masonry or steel construction, or a sufficient retaining wall to per-
manently support the adjoining earth," the word "earth" relates
only to earth in its natural condition, and no obligation is thereby im-
posed upon the excavator to furnish the support necessary for adjoining
land having upon it the burden of buildings.

TWO ACTIONS OF CONTRACT. Writs in the Superior Court
dated, respectively, February 12 and February 16, 1942.

The cases were heard together by *Williams*, J., upon a
case stated.

*D. J. Triggs*, for Corcoran and others, trustees.

*D. Burstein*, for S. S. Kresge Company.

COX, J. The S. S. Kresge Company, the defendant in
the first action and plaintiff in the second, hereinafter re-
ferred to as the corporation, is the lessee of a parcel of
land in Brockton. The plaintiffs in the first action, who
are defendants in the second, hereinafter referred to as the
trustees, are the owners of land to the south of and adjoin-
ing the corporation's premises.

From the statement of agreed facts it appears that the
northerly walls of the two buildings on the trustees' land
are built on the common boundary line of the two parcels.

The corporation, through a general contractor, commenced an excavation on its premises in connection with the construction of a building thereon, the southerly wall of which, when erected, would be built on the southerly line of the premises and would extend to a depth of "generally" ten feet, and at one point twelve feet, below the grade of the street upon which both lots abut. The bottom of the foundation of the northerly walls of the trustees' buildings is, with respect to one of the buildings, about eight feet below this grade, and, with respect to the other building, about five feet. The excavation on the corporation's premises, adjacent to the earth on the trustees' land, that is necessary in order to erect the foundation for the southerly wall of the corporation's proposed building would endanger the trustees' buildings and the adjoining earth beneath them, unless the earth is excavated under the northerly walls of the trustees' buildings to depths varying from approximately two to seven feet and unless underpinning under said walls is installed which would extend downward to the level of the bottom of the foundation of the southerly wall of the corporation's building. This work is necessary to support the adjoining earth on the trustees' land underneath the northerly walls of their buildings because of its condition, that is, with the burden of their buildings upon it, but would not be necessary to support such earth if it were in its natural condition without such buildings upon it. It was necessary to commence this underpinning work without delay and before the parties could determine upon whom the law imposed the burden of having it done. Accordingly, the parties entered into an agreement, hereinafter referred to, and, subject thereto and in reliance thereon, the trustees entered into a contract with the corporation's contractor to do the work and to pay him $3,000. The proposed construction by the corporation is a reasonable use of its premises.

The agreement between the parties sets out that they are agreed on the proposition of law that the corporation is required to furnish such support as would be necessary to support the trustees' adjoining land in its natural con-

dition, that is, in the condition in which it would be if there were no buildings upon it; that they disagree on the question of law whether under the provisions of c. 3, § 34, of the revised ordinances of 1926 of the city of Brockton, to the extent that that ordinance may be valid and effective, or by reason of any other valid ordinance or applicable rule of law, the corporation or the trustees are required to furnish such support as is necessary to support the trustees' adjoining land with the burden of their buildings upon it. If the corporation is required by law to furnish the support necessary to support the adjoining land with the buildings thereon, it agrees to pay the trustees $1,500 within ninety days from the date of the agreement, and to release them from all obligation to repay to it the sum of $1,500 advanced by it to them. If, however, the corporation is required by law to furnish such support only as would be necessary to support the trustees' adjoining land in its natural condition, the trustees are to repay the corporation, within ninety days from the date of the agreement, the sum of $1,500 that had been advanced to them. The agreement contemplates that if the dispute between the parties is not resolved on or before ninety days from its date, the corporation will bring an action against the trustees for an alleged breach of the agreement by them in failing to pay the corporation $1,500, and that the trustees will bring an action against the corporation for an alleged breach of the agreement for failure to pay said additional sum of $1,500. It is unnecessary to state other provisions of the agreement.

After ninety days had elapsed from the date of the parties' agreement, these actions of contract were brought, in each of which the plaintiff seeks to recover $1,500 for the alleged breach of the agreement. The cases were submitted to a judge of the Superior Court on a case stated. The corporation has not paid the trustees, nor has it released them from their obligation to repay it the sum advanced upon the execution of the agreement, nor have the trustees repaid the corporation the sum so advanced. The statement of agreed facts and the agreement between the parties, herein-

before referred to, are made a part of the case stated. Sections of the ordinances of the city of Brockton are set out, and it appears that the city has accepted the "corresponding" provisions of earlier laws "within the meaning of G. L. c. 143, § 3." The judge ordered judgment for the defendant in the trustees' action, and the trustees appealed. He found for the plaintiff in the corporation's action, assessed damages in the sum of $1,500, and ordered judgment, and the trustees appealed. G. L. (Ter. Ed.) c. 231, § 96.

General Laws (Ter. Ed.) c. 143, § 3, provides, as far as material, that every city, except Boston, may, by ordinances "consistent with law," regulate the inspection, materials, construction, alteration, repair, height, area, location and use of buildings and other structures within its limits. See *Commonwealth* v. *Atlas*, 244 Mass. 78, 82. The buildings and structures that are excepted from the provisions of this section are not involved in the cases at bar. Section 34 of the revised ordinances of 1926 of the city of Brockton, in full force and effect since July 20, 1926, provides as follows: "Any person causing any excavation to be made for a building, shall have the same properly guarded and protected. Wherever necessary, he shall at his own expense properly sheath pile and erect masonry or steel construction, or a sufficient retaining wall to permanently support the adjoining earth. Such retaining wall shall extend from full depth of excavation to the level of the adjoining earth and shall be properly coped. No foundation wall shall be less than twelve inches in thickness below the grade of the street." The trustees contend that under this section the burden of supporting their land with the buildings thereon was placed squarely upon the corporation.

A city ordinance in *Commonwealth* v. *Slocum*, 230 Mass. 180, 191, was described as a "single statutory entity." At all events, the authority to enact the ordinance in question is derived from G. L. (Ter. Ed.) c. 143, § 3, and its construction depends upon the source of its authority and the language of the ordinance itself. It is unnecessary to repeat the familiar rules that have been laid down, not

only as guides, but also as limitations for the construction of statutes and ordinances. See *Commonwealth* v. *Welosky,* 276 Mass. 398, 401, 402, and cases cited. It may be said, however, that legislative enactments cannot be presumed to go beyond the purpose manifested by their words, *Bullard* v. *Boston Elevated Railway,* 226 Mass. 262, 267, and if the words in the statute are clear and explicit, there is no room for speculation. *Westgate* v. *Century Indemnity Co.* 309 Mass. 412, 415. Moreover, words must be construed according to the common and approved usage of language, but technical words that may have acquired a peculiar and appropriate meaning in law must be construed according to such meaning. See G. L. (Ter. Ed.) c. 4, § 6, Third.

The parties are agreed that the corporation is required by law to furnish such support as is necessary to support the trustees' adjoining land in its natural condition. The rule at common law in this Commonwealth as to the right of lateral support of land in its natural condition, or with structures and improvements thereon, was carefully considered in *Gilmore* v. *Driscoll,* 122 Mass. 199, and what was there said was reaffirmed in the case of *Gorton* v. *Schofield,* 311 Mass. 352, 356. Without proof of actual negligence, a landowner who excavates upon his own land is not liable for injuries to buildings or improvements on adjoining land.

This rule of the common law is so firmly established that any legislation purporting to change it would require clear expression of any such intention. We find nothing in § 3 of said c. 143 to warrant the suggestion that the Legislature intended to confer upon cities, except Boston, and towns for that matter, the right to adopt ordinances or by-laws that would be in derogation of the common law as to lateral support. It is to be observed again that the ordinances and by-laws authorized by said section must be "consistent with law." Moreover, statutes and building laws made in derogation of the common law are to be construed strictly. *Gibson* v. *Jenney,* 15 Mass. 205. *Gagnon* v. *Ainsworth,* 283 Mass. 488, 490. We are of opinion, however, that the ordinance in question does not purport

to change the common law rule. This ordinance must be read as a whole, but it does not necessarily follow that its several provisions may not relate to different matters. For example, the first sentence of the ordinance, "Any person causing any excavation to be made for a building, shall have the same properly guarded and protected," manifestly relates to the premises where the excavation is made and imposes a duty upon the person causing the excavation to guard and protect it properly. It does not refer to adjoining landowners or adjoining land. The next sentence, however, does provide what the person excavating shall do to "permanently support the adjoining earth."

The use of the word "earth" in the ordinance is not without significance. It was that word that was used by Chief Justice Gray in the *Gilmore* case when he said: "Every owner of land is entitled, as against his neighbor, to have the earth stand . . . in its natural condition." (Page 201.) The use of the word in that case is of especial significance in view of the fact that the question there involved was whether the right to lateral support included not only the land, but also the structures upon it. See *Hatch* v. *Hawkes*, 126 Mass. 177, 181; *Howard* v. *Harvard Congregational Society*, 223 Mass. 562, 563. In the case last cited it was said, in effect, that the words "soil, earth and stones" have a somewhat definite significance in common understanding. In our opinion it would be a far cry to say that the word "earth," appearing in the ordinance in question, relates to anything but the "earth" in its natural condition. We think that, in enacting the ordinance, the word was used as it is commonly used to convey its commonly understood meaning. If the municipality had intended to impose a different and more onerous burden on an excavating landowner, it would have been easy to have said so. The remaining sentences in the ordinance require no conclusion different from the one we have reached. One of them clearly relates to such retaining wall as may be required to support the "adjoining earth," and the other relates generally to foundation walls that are below the grade of the street. It is true that the ordinance makes

specific provision for the kind of support for the adjoining earth that must be installed, but we think that it goes no further. See *Aston* v. *Nolan*, 63 Cal. 269, 271–272, 276; *Hannicker* v. *Lepper*, 20 S. D. 371, 374, 375. Compare *Massell Realty Improvement Co.* v. *MacMillan Co.* 168 Ga. 164, 168–170.

Reference has been made by the parties to the act relative to the construction, alteration and maintenance of buildings in the city of Boston, St. 1907, c. 550, § 19, wherein it is provided, among other things, that all excavations shall be so protected by the persons causing the same to be made, that the adjoining soil shall not cave in "by reason of its own weight." The trustees contend that if the sole intent of the ordinance in question had been that the excavator should support adjoining land in its natural condition, similar or identical language would have been used in the first sentence, and that the failure to include the words, "by reason of its own weight," indicates an intention to require the excavator to support the adjoining land with or without the pressure of any structures thereon. We do not agree with this contention for reasons already given. Said § 19 further provides that it shall be the duty of the owner of every building to furnish, or cause to be furnished, such support that his building shall not be endangered by any excavation, and that the owner of any building that is endangered by an excavation carried by an adjoining owner more than ten feet below the grade of the street may recover the expense of supporting such building from the person causing such excavation to be made. See *Regan* v. *Keyes*, 204 Mass. 294, 302; *Triulzi* v. *Costa*, 296 Mass. 24. No such provision is contained in the ordinance in question.

We are of opinion that the order for judgment in each case must be affirmed.

*So ordered.*